UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LILLIE YORK, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | ) CAUSE NO: 1:13-cv-1747 |
| | ) |
| INDIANA UNIVERSITY HEALTH, INC., | ) |
| | ) |
|     Defendant. | ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

### I. Nature of the Case

The Plaintiff, Lillie York (hereinafter "Plaintiff" and/or "York"), brings this action against her employer, Indiana University Health, Inc. (hereinafter "Defendant"), alleging that the Defendant has violated her rights under the Americans With Disabilities Act Amendments Act ("ADAAA" or "ADA"), 42 U.S.C. § 12101 *et seq.* and the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 *et seq*.

### II. Parties

1. York has resided within the Southern District of the State of Indiana at all relevant times.

2. Defendant is located within the Southern District of Indiana.

### III. Jurisdiction and Venue

3. Defendant is an "employer" within the meaning of 42 U.S.C. § 12111(5)(A) and 29 U.S.C. § 2611(4).

4. York is an "employee" within the meaning of 42 U.S.C. § 12111(4) and an

"eligible employee" within the meaning of 29 U.S.C. § 2611(2).

5. Jurisdiction is conferred on this Court by 28 U.S.C. § 1331, 42 U.S.C. § 12117, and 29 U.S.C. § 2617(a)(2).

6. At all relevant times, York had a "serious health condition" as that term is defined by the FMLA.

7. At all relevant times, Defendant employed 50 or more employees within a 75-mile radius of its office in Indianapolis, Indiana.

8. At all relevant times, Defendant regarded York as disabled.

9. At all relevant times, York's brother is disabled, is regarded as disabled, and/or has a record of disability.

10. York satisfied her obligations to exhaust her administrative remedies, having timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a right to sue, and York now timely files her lawsuit.

11. Venue is proper in this Court.

## IV.  Factual Allegations

12. York has been employed with Defendant since approximately July 15, 1998 as a registered nurse.

13. At all relevant times, York's work performance met or exceeded Defendant's legitimate expectations.

14. At all relevant times, York's supervisor was Judith Mahurin ("Mahurin").

15. York participated in Defendant's Weekend Option Program since approximately 1998.  Pursuant to said program, York was compensated at approximately 1.5 times her normal,

hourly rate.

16. At all relevant times, York's brother suffers from schizophrenia. Mahurin had knowledge of York's brother's disability.

17. During the course of her employment, Defendant subjected York to hostile terms and conditions of employment on the basis of her perceived disability and/or her association with people with disabilities, perceived disabilities, and/or records of disabilities. By way of example, and not of limitation, Mahurin accused York of being "bi-polar;" called York names such as "schizo" and "retard;" told York she needed to be on medication for mental illness; accused York's son of being mentally ill; teased York about York's brother's mental illness; and said that mental illness "runs in (York's) family."

18. York complained or attempted to complain to Defendant about Mahurin's harassment and the hostile working environment multiple times. By way of example, and not of limitation, York complained to Todd Stanley, Director, Martha Allen, Director, and Laura Otten, Human Resources Representative. York's complaints constitute protected activity.

19. York's complaints were ignored, and Defendant failed to take proper remedial action.

20. On or about December 9, 2011, York underwent surgery, which caused her to miss some time from work. York used her PTO to cover her absences.

21. York returned to work on or about December 23, 2011.

22. In or about January 2012, York developed an infection related to her surgery.

23. As a result, York was absent from work for a period of time.

24. On or about January 9, 2012, York contacted Defendant to request information

on filing for FMLA leave.

25. Defendant's employee benefits department gave York a telephone number to call to request FMLA. However, the number Defendant provided was for UNUM, who administers short term disability services for Defendant. York should have been given the number for FMLA Source, who is responsible for the administration of FMLA services for Defendant.

26. York contacted UNUM and applied for benefits.

27. Immediately after applying, York reported to Mahurin that she had applied for FMLA leave.

28. On or about January 25, 2012, York presented Mahurin with paperwork allowing her to return to work on January 28, 2012. During that meeting, Mahurin asked York to provide her with her FMLA documentation.

29. York provided Mahurin information relating to her application for benefits from UNUM.

30. On or about February 9, 2012, Defendant issued written discipline to York for alleged "no call/no shows" during her medical leave and placed her on a Performance Improvement Plan ("PIP"). As part of the discipline, Defendant informed York that she should have contacted FMLA Source to apply for FMLA benefits.

31. Thereafter, York contacted FMLA Source and applied for FMLA retroactively. York's request was approved.

32. Pursuant to Defendant policy, employees are permitted to donate their PTO to other employees. On information and belief, on or about the time York was absent from work in January, Mahurin refused to allow an employee to donate PTO to York or otherwise thwarted the

employee's attempt to do so.

33. On or about March 7, 2012, York developed another infection in relation to the surgery.

34. As a result, York was off of work for another period of time.

35. On or about March 14, 2012, York applied for FMLA leave from March 7, 2012 through March 29, 2012.

36. On or about March 26, 2012, York contacted FMLA Source regarding her need to extend her FMLA leave.

37. FMLA Source instructed York not to contact her manager and that it would do so.

38. York notified her coworkers and/or unit, in accordance with Defendant's policies and/or Mahurin's instructions, that she would not be at work on March 31, 2012 and April 1, 2012.

39. On April 17, 2012, Defendant subjected York to written discipline, suspended her without pay, removed her from the weekend option program, and ordered her to continue working weekends for ten months straight at her normal hourly rate for alleged "no call/no shows" on March 31, 2012 and April 1, 2012. York's suspension and her removal from the weekend option caused York to suffer financial losses and constitute adverse employment actions.

40. Thereafter, Mahurin told York, "I told you not to mess with me;" that she would never again be assigned to the Special Weekend Program as long as Mahurin was in charge; and warned York never to complain about her again because no one would believe her.

41. On or about April 30, 2012, FMLA Source notified York that she had been granted FMLA leave continuously from January 8, 2013 through January 27, 2012 and March 7, 2012 through April 1, 2012.

42. On or about April 30, 2012, Mahurin gave York a poor performance review. During the review meeting, Mahurin told York that another employee who had recently resigned reported that York and her alleged hostile attitude constituted one of the reasons the employee had left. York contacted the former employee to discuss the matter with her, and the former employee told York that such statements were fabricated and wrote a letter to Defendant complaining about Mahurin's conduct. In response, Mahurin told York she was never to contact the former employee again, or anyone else for that matter, regarding Mahurin.

43. In or about May 2012, Mahurin modified York's schedule and forced her to work on days she had previously scheduled off. York eventually had to cancel a planned trip, resulting in a financial loss.

44. On information and belief, Defendant has accorded more favorable treatment to similarly-situated employees who have not requested and taken FMLA leave and/or who are not perceived as disabled and/or who do not associate with individuals who are disabled, have a record of disability and/or are perceived disabled and/or who have not participated in protected conduct.

45. All reasons proffered by Defendant for its adverse actions against York are pretextual.

46. York has suffered, and continues to suffer, harm as a result of Defendant's unlawful actions.

### V.  Causes of Action

### I.  DISABILITY DISCRIMINATION – ADAAA

47.     York hereby incorporates paragraphs 1 - 46 of her Complaint.

48.     Defendant took adverse employment actions against York based on her perceived disability and/or her association with people who are disabled, have a record of disability and/or are perceived disabled.

49.     Defendant's unlawful actions were intentional, willful, and done in reckless disregard of York's rights as protected by the ADAAA.

50.     York has suffered, and continues to suffer, harm as a result of Defendant's actions.

### II.  RETALIATION – ADAAA

51.     York hereby incorporates paragraphs 1 - 50 of her Complaint.

52.     Defendant took adverse employment actions against York based on her participation in protected activity.

53.     Defendant's unlawful actions were intentional, willful, and done in reckless disregard of York's rights as protected by the ADAAA.

54.     York has suffered, and continues to suffer, harm as a result of Defendant's actions.

### III.  VIOLATIONS OF THE FMLA

55.     York incorporates paragraphs 1 - 54 of her Complaint.

56.     Defendant violated the FMLA by: (1) interfering with the terms and conditions of York's employment because she requested FMLA leave; (2) interfering with, restraining, and/or

denying York's exercise of and/or attempting to exercise her FMLA rights; and (3) retaliating against York for requesting FMLA leave.

57.     Defendant's unlawful actions were intentional, willful, and done in reckless disregard of York's FMLA rights.

## VI.  Relief Requested

WHEREFORE, Plaintiff, Lillie York, by counsel, respectfully requests that this Court find for her and order that:

1.     Defendant restore York to the same position, salary, and seniority, or pay front pay and benefits to York in lieu thereof;

2.     Defendant pay lost wages and benefits to York;

3.     Defendant pay compensatory damages to York;

4.     Defendant pay punitive damages to York;

5.     Defendant pay liquidated damages to York;

6.     Defendant pay pre- and post-judgment interest to York;

7.     Defendant pay York's attorneys' fees and costs incurred in litigating this action; and

8.     Defendant pay to York any and all other legal and/or equitable damages that this Court determines appropriate and just to grant.

Respectfully submitted,


*s/ John H. Haskin*
John H. Haskin (7576-49)

*s/ Jason P. Cleveland*
Jason P. Cleveland (24126-53)

JOHN H. HASKIN & ASSOCIATES
255 North Alabama Street, 2nd Floor
Indianapolis, Indiana 46204
(317) 955-9500
(317) 955-2570 fax
jhaskin@hlllaw.com
jcleveland@hlllaw.com
Attorneys for Plaintiff, Lillie York


## DEMAND FOR JURY TRIAL

The Plaintiff, Lillie York, by counsel, respectfully requests a jury trial as to all issues deemed so triable.

Respectfully submitted,


*s/ John H. Haskin*
John H. Haskin